UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

|  |  |  |
|---|---|---|
| DONALD LYNN MARTIN, | ) ) ) | |
| Petitioner, | ) ) | Case No. 0:21-cv-050-HRW |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| H. ALLEN BEARD, | ) ) | **AND ORDER** |
| Respondent. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Proceeding without counsel, Petitioner Donald Lynn Martin filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the calculation of his sentence by the Bureau of Prisons ("BOP"). [D.E. No. 1] Specifically, Martin claims that the BOP has failed to give him Earned Time Credits ("ETC") to which he believes that he is entitled under the First Step Act, 18 U.S.C. § 3632(d)(4).

By prior Order, the Court conducted a preliminary review of Martin's petition and directed the Respondent to file a response to Martin's claim that he is wrongfully being denied ETC. [D.E. No. 4] The Respondent has now filed his response [D.E. No. 8], to which Martin has filed an objection in reply. [D.E. No. 11] Thus, this matter is ripe for review.

1

I.

As a preliminary matter, in addition to Martin's claim that he is being denied ETC, Martin's Memorandum in support of his § 2241 petition also briefly refers to his underlying medical conditions and the COVID-19 pandemic, claiming that the preventative measures at FCI-Ashland have been inadequate. [D.E. No. 1-1] However, in its initial screening Order, the Court made clear that this case is about the specific issue identified in his § 2241 petition, which is whether Martin is being wrongfully denied ETC, not Martin's COVID-19 claims. [D.E. No. 4]  The Court further noted that, in addition to being irrelevant to his ETC claim, Martin has previously raised claims that he should be released in light of his medical conditions and the COVID-19 pandemic in the Court that sentenced him and these claims were denied. *United States v. Donald Lynn Martin*, 3:17-CR-141-DJH-HBB-1 (W.D. Ky. 2017) at D.E. No. 148, 155, 159, 160, 180.  The denial of Martin's motion for compassionate release filed pursuant to 18 U.S.C. § 3582 was affirmed on appeal to the United States Court of Appeals for the Sixth Circuit. *Id*. at D.E. No. 204.

Despite being advised that any attempts to continue to seek relief on his unrelated COVID-19 claims would be disregarded, [D.E. No. 4], Martin has filed a "supplemental" motion (purportedly under Fed. R. Civ. Pro. 15(d)), arguing that he should be able to pursue his COVID-19-related claims because he is challenging the duration of his sentence and the manner in which it is being executed. [D.E. No. 7]

Notwithstanding its label, Martin's "supplement" is not in the nature of a supplemental pleading at all, but rather seeks to "clarify his position in regards to the calculation of his remaining sentence." [D.E. No. 7][1] In his motion, Martin disputes the Court's conclusion that he is "attempting to re-litigate his 'compassionate release'" and "challenges the court's opinion based on the statutory interpretation and common understanding of the words contained in both, statutes and regulations." [*Id*. at p. 2]

To the extent that Martin's "supplemental" motion seeks reconsideration of the Court's prior Order, Martin fails to cite to any basis for granting him relief from the Court's Order under Fed. R. Civ. Pro. 60. Moreover, to the extent that Martin seeks immediate release based on the conditions of his confinement during the COVID-19 pandemic, this is only permitted in a § 2241 petition where the petitioner claims that *no* set of conditions exist sufficient to constitutionally confine the prisoner. In this very narrow circumstance, "the claim should be construed as challenging the fact or extent, rather than the conditions, of the

---

[1] Motions to supplement pleadings are addressed by Federal Rule of Civil Procedure 15(d), which authorizes the Court to permit a party "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). As Martin's motion does not relate to a transaction or occurrence that happened after he filed his § 2241 petition, his motion is not a proper motion to supplement under Rule 15(d). *See Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007). *See also Chicago Reg. Council of Carpenters v. Village of Schaumburg*, 644 F. 3d 353, 356-57 (7th Cir. 2011).

confinement." *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020). However, Martin does not contend that there are no conditions that would be constitutionally sufficient for his confinement, even in light of his underlying health conditions. Rather, Martin claims that the measures employed by the BOP and staff at FCI-Ashland are insufficient to safeguard prisoners from COVID-19, a claim that is an attack on the adequacy of the conditions of his current confinement which may not be raised in a § 2241 petition. *See Muhammed v. Close*, 540 U.S. 749, 750 (2004) (while "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a [civil rights] action."); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004) ("[Section] 2241 is a vehicle not for challenging prison conditions, but for challenging matters concerning the execution of a sentence such as the computation of good-time credits.").

While Martin may disagree with the Court's conclusions limiting the nature of the claims that he may pursue in this case, disagreement with the Court is not a valid ground for relief under Rule 60. *See Michigan Flyer, LLC v. Wayne County Airport Authority*, 860 F.3d 425, 431 (6th Cir. 2017). *See also United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2013) ("[A] motion to reconsider generally is not a vehicle to reargue a case; it may not be used to raise arguments that could have

4

been raised on initial consideration."); *Jinks v. Allied Signal, Inc.*, 250 F. 3d 381, 385 (6th Cir. 2001) ("Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof."). For all of these reasons, to the extent that Martin's motion [D.E. No. 7] seeks relief from the Court's prior Order limiting Martin's claims in this case to his ETC claim, Martin's request for relief is denied.

## II.

Turning to the claim that is before the Court, in April 2018, Martin was convicted by a jury in the United States District Court for the Western District of Kentucky of one count of Attempt to Persuade, Induce & Entice a Minor to Engage in Sexual Activity for which a Person Can Be Charged with a Criminal Offense in violation of 18 U.S.C. § 2422(b) (Count One) and one count of Traveling in Interstate Commerce to Engage in Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b) (Count Two). In August 2018, Martin was sentenced to terms of imprisonment of 120 months as to each of Counts One and Two, to run concurrently for a total term of 120 months imprisonment. *See United States v. Donald Lynn Martin*, 3:17-CR-141-DJH-HBB-1 (W.D. Ky. 2017). Martin's projected release date is April 29, 2026, and is Home Detention Eligibility date is October 29, 2025. [D.E. No. 8-1, Declaration of Beth Koster at Attachment A: Inmate Data]

In his § 2241 petition, Martin claims that the BOP refuses to apply "earned time credits" toward his sentence to which he believes that he is entitled under the First Step Act of 2018. [D.E. No. 1 at p. 7]   The First Step Act ("FSA"), Publ. L. No. 115-015, 132 Stat. 015 (2018), which was signed into law on December 21, 2018, includes a provision directing the Attorney General to develop a new "risk and needs assessment system" (referred to as the "System") to provide appropriate programming for prisoners in an effort to reduce the risk of recidivism. 18 U.S.C. § 3632.  As set forth in § 3632, the System shall be used to determine each prisoner's recidivism risk; assess the prisoner's risk of violent or serious misconduct; determine the type and amount of evidence-based recidivism reduction ("EBRR") programming appropriate for each prisoner; periodically reassess the recidivism risk of each prisoner; reassign the prisoner to the appropriate EBRR programs or productive activities ("PA") based on the revised determination; determine when to provide incentives and rewards for successful participation in EBRR or PA programs; and to determine when a prisoner is ready to transfer into prerelease custody or supervised release.  18 U.S.C. § 3632(a)(1)-(7).  The System is also required to provide incentives and rewards for prisoners to participate in EBRR programs, including additional time credits to be applied toward time in prerelease custody or supervised release, thus allowing eligible prisoners to be placed in

prerelease custody (i.e., home confinement or a Residential Reentry Center) earlier than previously allowed. *See* 18 U.S.C. § 3632(d)(4).

However, prisoners were not immediately entitled to earn these time credits upon the enactment of the FSA on December 21, 2018. First, Section 3632(d)(4)(B)(i) specifically precludes a prisoner from earning additional time credits for an EBRR program that was completed by a prisoner prior to the date of enactment of the FSA. 18 U.S.C. § 3632(d)(4)(B)(i). In addition, the Act itself provides the Attorney General with 210 days after the date of enactment to develop and publicly release the System. 18 U.S.C. § 3632(a). Consistent with this timeline, the Attorney General published the System on July 19, 2019. *See* U.S. Dept. Of Justice, The First Step Act of 2018: Risk and Needs Assessment System, (July 19, 2019), available at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf.

Under 18 U.S.C. § 3621(h)(1), the Attorney General then had 180 days after release of the System (or until January 15, 2020) to implement and complete the initial intake risk and needs assessment for each prisoner, begin to expand the effective EBRR and PA programs it offers, and to begin to implement the other "risk and needs" assessment tools necessary to effectively implement the System over time. 18 U.S.C. § 3621(h)(1). Section 3621(h)(2) then provides for the System to be "phased in" over two years, giving the BOP two years after the completion of the

"risk and needs" assessment for each prisoner within which to provide the EBRR and PA programs in compliance with the FSA. 18 U.S.C. § 3621(h)(2).

While § 3621(h)(4) provides that the BOP *may* begin to expand its EBRR and PA programs as soon as the date of enactment, it is not required to do so. 18 U.S.C. § 3621(h)(4). Thus, under the provisions of the FSA, the BOP has until two years after January 15, 2020 – or until January 15, 2022 – to fully implement the program. Accordingly, because the FSA does not require the BOP to provide EBRR and PA programs for all prisoners until January 15, 2022, Martin's claims are not yet ripe, thus his § 2241 petition must be denied. *See Price v. Gilley*, No. 6:20-cv-232-HRW, 2020 WL 8669870, at *1 (E.D. Ky. Nov. 24, 2020) (denying § 2241 petition because the deadline for the BOP to make available the rehabilitation programming at issue will not come to pass until January 2022, the petitioner does not indicate that he has actually an successfully completed any of the required programming, and, even if he had, he is ineligible for ETC because of his crime of conviction); *United States v. Girod*, No. 5:15-cr-087-DCR, 2020 WL 1931242, at *3 (E.D. Ky. Apr. 21, 2020) ("Further, it appears that the BOP has until January 2022 to 'provide such evidence-based recidivism reduction programs and productive activities for all prisoners' under the First Step Act.") (citing § 3621(h)(2)).

In addition, Respondent also argues that Martin's § 2241 petition should be denied because he has not completed any programming through which he may earn

ETC. According to Respondent, Martin's risk and needs assessment determined that, based upon his specific needs, he may receive ETC by completing EBRR or PA programs in the following areas: (1) cognition; (2) medical, (3) recreation/leisure/fitness. [D.E. No. 8 at p. 4; D.E. No. 8-1, Koster Decl. at Attachment A] However, none of the courses that Martin has completed (including Conversational Spanish in April 2020 and History of Aviation in April 2019) qualify as recommended and approved EBRR and/or PA programs for Martin to earn ETC, as they are not approved EBRR and/or PA programs, nor were they recommended by Martin's Unit Team. [D.E. No. 8 at p. 5; D.E. No. 8-1, Koster Decl. at Attachment A, E, F, G]

Similarly, while Martin has been employed in Food Services, Education, and as an orderly, none of these are an approved EBRR and/or PA program. [D.E. No. 8 at p. 5; D.E. No. 8-1, Koster Decl. at Attachment E, G] Thus, Martin has no ETC resulting from his completion of these courses or through his employment. *See* 18 U.S.C. § 3632(b) (the System implemented through the FSA requires the assignment of specific EBRR and productive activities for each prisoner based upon their specific individual needs). *See Rehfuss v. Spaulding*, No. 1:21-CV-00677, 2021 WL 2660869, at *5 (M.D. Pa. June 29, 2021) (rejecting petitioner's claim that he is entitled to ETC for completion of a program that "does not correspond to a need Petitioner was assessed as having," nor may he earn ETC for work details that do

not qualify as EBRRs or PAs); *Butler v. Bradley*, No. CV-20-11211-DMG-RAO, 2021 WL 945252, at *4 (C.D. Cal. Feb. 22, 2021) ("If an inmate could accrue FSA credits by participating in any type of recidivism-reduction program or activity, the statutory language instructing the BOP to establish and implement an individualized risk and needs assessment system, 18 U.S.C. § 3632(a), (b), would be superfluous.").

Martin relies on *Goodman v. Ortiz*, No. 20-cv-7082 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020) and argues that, if a prisoner was previously assigned to a prison job or PA prior to the release date of the System on July 19, 2019, then that prisoner (if otherwise eligible) would begin to earn ETC beginning no later than July 20, 2019. [D.E. No. 1 at p. 4]  In *Goodman*, an unpublished decision that is not binding on this Court, the Court recognized that, while § 3621(h)(4) "does not explicitly provide a date when the BOP *must* apply a prisoner's earned credits from participation in recidivism reduction programs, it does require a 2-year phase-in, not only of participation in the programs, but of incentives for participation in the programs." *Id*. at *6. Thus, the *Goodman* Court rejected the BOP's argument that it was not required to apply the petitioner's ETC before the January 15, 2022 completion date for the phase-in.

However, as noted by Respondent, *Goodman* stands "virtually alone" in this interpretation of the law and its reasoning has been repeatedly rejected by other courts considering the issue. *See, e.g., Holt v. Warden*, --- F.Supp.3d ---, 2021 WL

10

1925503, at *5 (D.S.D. May 13, 2021) ("The majority of courts that have addressed the issue arrive at a contrary conclusion [from *Goodman*]."); *Fleming v. Joseph*, No. 3:20-CV-5990-LC-HTC, 2021 WL 1669361, at *5 (N.D. Fla. Apr. 7, 2021), *report and recommendation adopted*, No. 3:20-CV-5990-LC-HTC, 2021 WL 1664372 (N.D. Fla. Apr. 28, 2021) ("[T]he undersigned disagrees with the *Goodman* court's conclusion that the FSA requires immediate implementation, even as to those prisoners facing imminent release dates."); *Cohen v. United States*, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *2-*3 (S.D.N.Y. Apr. 20, 2021) (rejecting *Goodman* and noting that "[t]he overwhelming majority of courts to have considered this issue have agreed with the Government's view," which is that "under the FSA, the BOP is not required to provide evidence-based recidivism reduction programing and productive activities for all prisoners, or calculate or apply time credits earned, until January 15, 2022."); *Kennedy-Robey v. FCI Pekin*, No. 20-CV-1371, 2021 WL 797516, at *4 (C.D. Ill. Mar. 2, 2021) ("If immediate implementation were mandated, Congress would have used the word "shall" and not "may" in 18 U.S.C. § 3621(h)(4).").

Moreover, unlike Martin, in *Goodman*, the BOP did not dispute that the petitioner's Case Manager did an initial needs assessment of the petitioner and had determined and assigned PAs for the petitioner that met the requirements of the FSA. Nor did the BOP dispute that the petitioner successfully participated in this

11

programming and, if the petitioner's ETC earned from this programming were immediately applied, he should have been released in July 2020. *Goodman*, 2020 WL 5015613 at *2. Thus, unlike in this case, the parties did not disagree that the petitioner had earned ETC as provided by the FSA; rather, the question was when the BOP was obligated to apply the ETC that the petitioner had undisputedly earned.

In contrast, in this case, the Respondent has submitted documentation showing that Martin has *not* earned any ETC. [D.E. No. 8-1 Koster Decl. at Attachment A, E, F, G] Martin does not dispute this contention in his reply, choosing instead to focus on a baseless attack on the judicial authority of this Court and of the United States District Court for the Western District of Kentucky. [D.E. No. 11][2] Even so, the Court has reviewed the documentation submitted by Respondent (and not challenged by Martin) and agrees that Martin has not earned any ETC by completing any qualifying EBRR and/or PA programs or through his employment.

For all of the foregoing reasons, the Court finds that Martin is not entitled to the ETC that he seeks in his § 2241 petition, thus his petition will be denied.

---

[2] To be sure, despite Martin's claim that this Court does not have jurisdiction over his § 2241 petition (which he voluntarily filed here) and is, therefore, "legally incapable" to rule on his petition [D.E. No. 11 at p. 6], a habeas petition filed pursuant to § 2241 challenging an inmate's present physical confinement must be filed in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (because the only proper respondent to a habeas petition is the petitioner's custodian at the time of filing, it must be filed in the district court where the prisoner is incarcerated). Because Martin was confined at FCI-Ashland at the time his petition was filed, his § 2241 petition is appropriately before this Court.

Accordingly, **IT IS ORDERED** that:

1. To the extent that Martin's "Motion and Notice under Fed. R. Civ. Pro. 15(d)" [D.E. No. 7] requests affirmative relief from the Court, Martin's request for relief is **DENIED**.

2. Martin's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [D.E. No. 1] is **DENIED**.

3. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

4. A corresponding Judgment will be entered this date.

This the 30th day of November, 2021.

Signed By:
Henry R Wilhoit Jr.
United States District Judge